HEARD APRIL TERM, 1872.

ALLEN *vs.* HARLEY.

The exception in the Constitution of 1868, and Acts of Assembly since passed, that the family homestead shall not be exempt from levy and sale for debts contracted in the erection of improvements thereon, applies to a debt contracted for that purpose before the Constitution was adopted.

BEFORE FARMER, J., AT BARNWELL, DECEMBER TERM, 1871.

On the 27th October, 1869, William Allen, the plaintiff, recovered and entered judgment, in the Court of Common Pleas, for Barnwell County, against John H. Harley, the defendant, for

$104.08. The action was upon a promissory note, dated 16th November, 1867, given by defendant to plaintiff for improvements put by the latter, in the fall of 1867, upon the mill-house of defendant.

On the 4th September, 1866, Lewis M. Ayer entered a judgment against Harley for $1,124.90, and on the same day lodged execution thereon with the Sheriff of Barnwell County. On the 8th July, 1869, the execution of Ayer was levied upon a tract of land containing 800 acres, on which were the residence and mill-house of Harley, and the Sheriff caused to be set off to the defendant his family homestead, which embraced 600 acres of the tract, including the mill and mill house on which the improvements had been put by plaintiff.

This was an application by Allen to the Circuit Judge, to certify on his execution against Harley, that it was issued to " enforce an obligation contracted for the erection of improvements on his (defendant's) homestead, and for no other purpose."

Notice of the application, with a copy of an affidavit by Allen, stating the facts, was served upon Harley, and the case was heard upon the moving papers. His Honor denied the motion, and assigned his reasons as follows :

FARMER, J. The plaintiff, Allen, in the fall of the year 1867, as a mechanic, worked on the defendant's mill ; took his note for the same, which he sued and obtained judgment on in October, 1869, and this motion is had under the 3d Section of the A. A. 1868, for the certification by this Court, "that said process is issued to secure or enforce an obligation contracted for the erection of improvements on his homestead, and for no other purpose." The question presented is, what homestead is here meant ; that is, whether it be the family residence before the estate of homestead is set over, or this " estate " when so set over to the use of the family ? It appears to the Court that the Act of 1868 refers to this " estate of homestead," and for the reason that the first Section thereof designates the particular tract from which this estate is to be carved, and the manner of carving it out ; the 2d Section is as to the " personal estate ;" and the 3d, expressly referring to this estate " as the said homestead," by its proviso then authorizes the certification, that it is for " erection of improvements thereon." Until this Court, therefore, is satisfied that such improvements were erected on the estate of homestead, it has no warrant of authority for the certificate prayed for. The argument, if true, as pressed, that improvements put upon the family residence before this estate is *in esse*, is likewise

protected through the right of homestead guaranteed by the Con-
stitution, gives no authority to this Court to enforce such protec-
tion. The remedy under the A. A., 1868, applies to such cases
only as come within its provisions; that is, improvements erected
on the estate of homestead. The construction thus given to the
constitutional exemption by this statute, controls this Court, and is
deemed both wise and proper. By the exemption no reasonable
doubt can be entertained, but that the law makers designed munifi-
cence to the ruined debtor's family, and the estate of homestead
was to be a substantive contribution from creditors for such purpose
only, otherwise the exemption is but "keeping the word of promise
to the ear and breaking it to the hope," as to the ruined family,
and to contributing creditors not merely the preferring of one cred-
itor to another, but taking the goods of one and giving it to another.
In this instance it is the releasing of property covered by Ayer's
senior judgment for the benefit of Allen's junior judgment, when,
too, the law at the period the mechanic, Allen, did his work, not
only recognized the lien of Ayer's judgment, but as expressly denied
the right to the mechanic of interfering with it. Entertaining the
view that this case does not come within the purview of the A. A.,
1868, the motion for the certification therein authorized is dis-
missed.

The plaintiff appealed.

*Mayer*, for appellant.

*A. P. & Robert Aldrich*, contra.

June 10, 1872. The opinion of the Court was delivered by

WRIGHT, A. J. In this case the plaintiff obtained a judgment
against the defendant for one hundred and four dollars and eight
cents on a promissory note given for the erection of improvements
on the homestead of the defendant in the fall of 1867. On the 5th
of February, 1872, under the third Section of the Act of the Gene-
ral Assembly of 1868 entitled "An Act to determine and perpet-
uate the homestead," a motion was made to the Court for a certifi-
cate, which was refused, and from the order refusing a certificate an ap-
peal has been taken to this Court. The question to be determined
is, did the Constitution of 1868, from its ratification, exempt from
attachment, levy or sale the family homestead, or is the "head of
every family residing in this State" not entitled to the homestead
until it shall have been "set off by the Sheriff or other officer exe-

cuting the process" as provided by the Act of the General Assembly of 1868. Relative to the family homestead the Constitution of 1868 is very expressive, clear and precise. Section 20, Article I, declares that "a reasonable amount of property as a homestead shall be exempted from seizure or sale for the payment of any debts or liabilities, except for the payment of such obligations as are provided in this Constitution."

The obligations or exceptions are mentioned or enumerated in Section 32, Article II. The Section is as follows: "The family homestead of the head of each family residing in this State, such homestead consisting of dwelling house, out buildings and lands appurtenant, not to exceed the value of one thousand dollars, and yearly products thereof, shall be exempt from attachment, levy or sale on any mesne or final process, issued from any Court." This Section proceeds further, and after giving the character of the property to be exempt, says: "*Provided,* That no property shall be exempt from attachment, levy or sale for taxes or payment of obligations contracted for the purchase of said homestead, or the erection of improvements thereon: *Provided, further,* That the yearly products of said homestead shall not be exempt from attachment, levy or sale for the payment of obligations contracted in the production of the same. It shall be the duty of the General Assembly, at their first session, to enforce the provisions of this Section by suitable legislation."

The homestead means simply the place of residence of the family, and the act of the "Sheriff or other officer," in setting off a certain portion of land about the residence is only determining the value of what shall be exempt "from attachment, levy or sale on any mesne or final process issuing from any Court," and does not contribute anything to the making of the homestead. To carry out the requirements of Section 32 of Article II of the Constitution of 1868, the General Assembly, at its first session after the ratification of the said Constitution, passed an Act entitled "An Act to determine and perpetuate the homestead," in which it is said "whenever the real estate of the head of a family, residing in this State, shall be levied upon by virtue of any mesne or final process issued from any Court upon any judgment obtained upon any right of action, whether arising previous or subsequent to the ratification of the Constitution of the State of South Carolina, if the same be the family homestead of such person, the Sheriff or other officer executing said process shall cause a homestead, such as said person may select, not to ex-

ceed the value of one thousand dollars, to be set off to said person in the manner following, to wit:" [Here the manner in which the "Sheriff or other officer" is to proceed in laying off the homestead is clearly and specifically set forth.] It appears that the General Assembly, by the use of the words, "if the same be the family homestead," considered that the right of homestead existed and should be protected by the Constitution of 1868, and the laws thereunder.

Section 3 of the same Act says: "The exemption of Sections 1 and 2 of this Act shall not extend to any attachment, levy or sale on any mesne or final process issuing to secure or enforce the payment of taxes or obligations contracted for the purchase of said homestead, or obligations contracted for the erection of improvements thereon: *Provided,* The Court, or authority issuing said process, shall certify thereon that the same is issued for some one or more, and no other, of said purposes: *Provided, further,* The yearly products of said homestead shall be subject to attachment, levy and sale to secure or enforce the payment of obligations contracted in the production of the same; but the Court issuing the process therefor shall certify thereon that the same is issued for said purpose and no other." It is perceived that there are three classes of obligations or claims that are specially excepted, and these stand good against the homestead, viz: Taxes, purchase money, and improvements made upon the homestead; therefore, the right of the homestead existing, and that right being recognized and sanctioned by the Constitution of 1868, and the right to make the homestead liable for certain obligations that existed at the ratification of the said Constitution, or that might exist thereafter, and the right to enforce payment of such obligations against the homestead not being interfered with, but specially protected by the Constitution and the laws thereunder, the motion asked for should have been granted.

*Willard,* A. J., concurred.